Edward W. Swanson, SBN 159859
ed@smllp.law
Mary McNamara, SBN 147131
mary@smllp.law
Britt Evangelist, SBN 260457
britt@smllp.law
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010

Daniel B. Olmos, SBN 235319
dolmos@nbo.law
NOLAN BARTON & OLMOS LLP
600 University Avenue
Palo Alto, CA  94301
Tel. (650) 326-2980
Fax (650) 326-9704

Attorneys for XUEHUA ED PENG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    vs.<br><br>XUEHUA "ED" PENG<br><br>    Defendant. | Case No.  CR  19-00589 HSG<br><br>**DEFENDANT XUEHUA PENG'S SENTENCING MEMORANDUM**<br><br>Sentencing Hearing: March 2, 2020<br>Time: 2:00 p.m.<br>Court: Hon. Haywood S. Gilliam Jr. |

## I. INTRODUCTION

Defendant Xuehua "Ed" Peng pled guilty to one count of Acting as a Foreign Agent without Notification, in violation of 18 U.S.C. § 951. Mr. Peng admits and understands the seriousness of his offense, and he recognizes that for his conduct he should receive a lengthy custodial sentence. The parties have proposed, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, a sentence of 48 months, along with a $30,000 fine. The Probation Office agrees with the sentence recommended by the parties. Because this offense does not have a guidelines range, the provisions of 18 U.S.C. § 3553(a) control. The sentence proposed by the parties and Probation is sufficient but not greater than necessary to achieve the statutory goals of sentencing. Other than this offense, Mr. Peng has led a crime-free life. He is a caring husband and devoted father. He deeply regrets his actions, and he is likely to suffer collateral consequences of them for the rest of his life. A prison term of 48 months for any offender, but especially for a first-time offender like Mr. Peng, provides sufficient punishment both to reflect the seriousness of the offense and to deter any future criminal conduct. In addition, a survey of § 951 cases reveals a 48-month sentence falls at the high end of the range for sentences imposed in these cases, further evidencing that the proposed sentence will achieve the statutory goals of sentencing. For these reasons, counsel submits this memorandum to request the Court sentence Mr. Peng to the agreed-upon term of 48 months imprisonment and a $30,000 fine.

## II. PRESENTENCE REPORT

Mr. Peng has no objections to the Presentence Report ("PSR"). Like the government, Mr. Peng agrees with Probation's recommendation that the appropriate sentence in this case is a sentence of 48 months and a $30,000 fine. PSR Recommendation at pg. 1.

## III. SENTENCING RECOMMENDATION

**A.   A sentence of 48 months is appropriate in light of the nature of the offense and the history and characteristics of the defendant**

Turning first to the nature of the offense, the PSR accurately describes the offense conduct, and Mr. Peng does not dispute the seriousness of his conduct. PSR, ¶¶ 5-35. However, Mr. Peng's conduct

**Defendant's Sentencing Memo.**
*United States v. Peng*
CR 19-00589 HSG

-2-

in this case contradicts his life-long dream of living as a productive citizen in the United States.  Mr. Peng is not radicalized or politically motivated to harm this country.  He is a simple man who was recruited by sophisticated foreign agents.  That simplicity in no way excuses Mr. Peng's criminal activity.  He acted willingly and continued the conduct long after he understood it was wrong, but he did not act out of ill will or opposition to this country.  Rather, he "considers himself to be an American and appreciates the chance that the U.S. has given him."  PSR, ¶ 38.  He "cherishes traditional American values of democracy and freedom" and, as he explained to the Probation Officer, "[h]aving a simple life in the U.S. has always been the major part of my blueprint of life."  *Id*. at ¶¶ 38, 50.  Before being recruited to commit this crime, Mr. Peng had achieved that life-long dream.  As he explains in his statement, after he his release from custody, Mr. Peng is committed to living up to the ideals that first drew him to this country, and he will never again do anything that could harm the country he has chosen as his own.

Mr. Peng's history also supports the agreed-upon sentence of 48 months.   Born in China in 1963 to a family of traditional Chinese medicine practitioners, Mr. Peng lived in a loving home with his brother and sister.  PSR, ¶¶ 49-50.  His father worked as an engineer and his mother as a physician in traditional Chinese medicine.  *Id*. at 49.  Mr. Peng's parents emphasized education, and Mr. Peng followed in his parents' footsteps, earning degrees in engineering and traditional Chinese medicine.  *Id*. at ¶¶ 50-51.  Mr. Peng married in China and had his first child in 1988.  *Id*. at ¶ 52.  He later separated from his wife and emigrated to the U.S. in 2000 with his daughter.  In 2012, he became a citizen.  *Id*. at ¶ 51.  Mr. Peng married his current wife in 2013, and the couple now has two young daughters, age 3 and 5.  *Id*. at ¶ 54.

Mr. Peng has led a life characterized by generosity and dedication to his family.  Until his arrest, he was an ever-present source of support for his family.  The letters submitted to the Court in support of Mr. Peng all speak to his dedication to those he loves.  Declaration of Britt Evangelist ("Evangelist Decl."), **Ex. A** (letters of support).  In her letter to the Court, his eldest daughter explains that Mr. Peng "always tells me that family is fundamental, as the oldest son in the family, he has the responsibility to keep everybody together."  *Id*. at 3.  By all accounts, Mr. Peng took that responsibility seriously.

Mr. Peng has been a caring and supportive son to his elderly parents.  His mother describes in her letter to the Court how Mr. Peng cared for his father after a sudden stroke and paralysis in 2007 and how Mr. Peng cared for her during her fight with cancer.  *Id*. at 2.  His eldest daughter likewise recalls how Mr. Peng "stopped all his work and took care of [her grandfather] for two years" after his stroke and how Mr. Peng as taken his mother on yearly trips since her diagnosis with cancer in 2010 "to make sure she can still enjoy and experience the world while she is able to do so."  *Id*. at 3.

Mr. Peng has also been a supportive and involved father to his three children.  Mr. Peng's eldest daughter recounts how he encouraged her to complete her education and be independent, and how, in times of anger and sadness, only he can calm her down.  *Id*. at 3.  Before his arrest, Mr. Peng provided most of the childcare for his two young daughters while his wife worked fulltime.  PSR, ¶ 54.  Now, of course, with Mr. Peng incarcerated for the next four years, his wife and daughters will need to cope with his absence.  His wife has struggled with the day-to-day realities of working fulltime and caring for two small children.  Thankfully, other members of the family have thus far been able to provide support during Mr. Peng's incarceration.  *Id*. at ¶ 55.  But the absence of Mr. Peng in the home has been felt deeply by his young daughters.  Even though they have not been told the details of his situation, his wife reports his 5 year old has been bullied at school as a result of the case and has yelled "I will send you to jail" at their youngest daughter when angered.  *Id*.  Mr. Peng is attuned to the hardship and pain this case has and will continue to inflict on his family, most importantly his young daughters.  In her letter to the Court, Mr. Peng's wife speaks of how "the most painful situation for him in prison life right now" is being away from his two young daughters.  Evangelist Decl., **Ex. A**, 1.  His oldest daughter echoes this sentiment, saying "how tough and hard it must be that he has to confront being away from his family and that he knows he is to blame for that." *Id*. at pg. 3.  Having spent time with Mr. Peng while in custody, counsel can attest to how painful it has been to Mr. Peng to be separated from his children.

While Mr. Peng has been most focused on the welfare of his family, his generosity does not end with those closest to him.  Prior to being incarcerated, Mr. Peng donated regularly to charities, including a foundation for children with cancer.  PSR, ¶ 51; Evangelist Decl., **Ex. A**, 3 (Mr. Peng's eldest daughter explaining that he "demonstrates to me how to give back to the community); *id*. at 3 ("We have never

**Defendant's Sentencing Memo.**
*United States v. Peng*
CR 19-00589 HSG

-4-

1  been a wealthy family, but [Mr. Peng] donates money every year to help those who are in need."). He
2  also volunteered with a local association of practitioners of Chinese medicine. PSR, ¶ 51.

### B. A sentence of 48 months achieves the preventative goals of sentencing

A custodial sentence longer than 48 months is not needed to achieve the preventative goals of sentencing such as deterrence and public protection. (18 U.S.C. § 3553(a)(2)(A)-(C)).

Although a guideline range cannot be calculated for a § 951 offense[1], a sentence of 48 months falls at the high end of sentences imposed in § 951 cases.[2] *See United States v. Chun*, Case No. 16-cr-0518 (S.D.N.Y.) (defendant, a FBI electronics technician with a top secret security clearance, sentenced to 24 months for selling sensitive FBI information to Chinese officials over a period of years); *United States v. Buryakov*, Case No. 15-cr-0073 (S.D.N.Y.) (defendant sentenced to 30 months for gathering intelligence on behalf of Russia while posing as an employee in the Manhattan office of a Russian bank); *United States v. Nicholson*, Case No. 09-cr-00040 (D. Or.) (a CIA officer and the son of a Russian agent both pled guilty to conspiracy to violate and violations of Section 951; CIA agent received a 60-month sentence, and the son of the Russian agent received 60 months of supervised release); *United States v. Kang*, Case No. 08-cr-210 (E.D. Va.) (sentenced to 18 months for delivering classified defense documents to Chinese government); *United States v. Alvarez*, 506 F. Supp. 2d 1285 (S.D. Fla. 2007) (defendants sentenced to between 36 and 60 months for spying on the Cuban community of South Florida and sending information back to Cuba concerning individuals and groups

---

[1] Section 2X5.1 provides that where the guidelines do not expressly specify a guideline range, the court should "apply the most analogous guidelines. If there is not a sufficient analogous guideline, the provisions of 18 U.S.C. § 3553 shall control." Courts have determined that there is not a sufficiently analogous guideline for § 951 sentences. *See United States v. Soueid*, No. 11-CR-494, Doc. 59 (E.D. Va.).

[2] Defense conducted a survey of sentences imposed nationwide in § 951 cases. Cases were located by conducting internet searches for news articles and press releases for § 951 prosecutions, performing PACER searches in several jurisdictions, and reviewing published cases involving § 951 prosecutions.

**Defendant's Sentencing Memo.**
*United States v. Peng*
CR 19-00589 HSG

opposed to Castro regime); *United States v. Maionica*, Case No. 07-cr-20999 (S.D. Fl.) (defendants sentenced to between 24 and 48 months for acting on behalf of Venezuelan government in attempting to bribe/extort a U.S. citizen); *United States v. Park*, Case No. 05-cr-00059 (S.D.N.Y.) (after trial, defendant sentenced to 37 months after receiving payment directly from Iraqi government, while cooperating co-defendant received a sentence of probation); *United States v. Dumeisi*, 424 F.3d 566 (7th Cir. 2005) (defendant sentenced to 46 months following conviction for acting as an agent of Iraqi government); *United States v. Mariia Butina*, Case No. 18-cr-218 (D.D.C.) (defendant sentenced to 18 months after acting as an agent of Russia and providing information about Americans in a position to influence American politics and taking steps to establish an unofficial line of communication between Russia and these Americans); *United States v. Soueid*, Case No. 11-cr-0494 (E.D. Va.) (defendant sentenced to 18 months for collecting recordings of and information regarding individuals in the U.S. and Syria who protested against the Government of Syria and provided those recordings and information to the government of Syria); *United States v. Cabelly*, Case No. 09-cr-0278 (D.D.C.) (defendant sentenced to 8 months for performing work on behalf of Sudan and providing Sudan with sensitive U.S. government information). A sentence of 48 months, situated as it is near the top end of sentences generally imposed in these cases, can be trusted to achieve the statutory sentencing goals of reflecting the seriousness of the offense, promoting respect for the law, providing for general deterrence, and protecting the public. Furthermore, a lengthier sentence would result in unwarranted sentencing disparities between Mr. Peng and other defendants who committed similar or more serious § 951 offenses.

      Regarding specific deterrence, Mr. Peng's lack of criminal history underscores the fact that lengthier incarceration is not needed to deter future criminal behavior. The letters submitted to the Court also attest to the fact that Mr. Peng has already learned from the terrible mistake he made and will not make a similar mistake in the future. *See* Evangelist Decl., **Ex. A** at 2 ("I know in his heart he is so sad for his wrongdoings – the shame and pain he has brought to his family. I believe my son learned his lesson – he will be a better person when he is released."); *id*. at 1 ("Xuehua has a deep understanding of the impact of his mistakes on his family and his country. I hope your honor can see that Xuehua is a

**Defendant's Sentencing Memo.**
*United States v. Peng*
CR 19-00589 HSG

kind and gentle person. He has already learned a lesson from these events and looks to correct his mistakes[.]"); *id*. at 3 ("I know my father is extremely penitent offence and is extremely unlikely to reoffend"). Mr. Peng expressed remorse for his conduct, regret for how his actions could have harmed his adopted country, and a commitment not to repeat his mistake in the future. PSR, ¶ 38. A lengthier term of incarceration is not needed to deter Mr. Peng from committing future crimes.

### IV.　CONCLUSION

For the foregoing reasons, Mr. Peng respectfully requests that this Court impose the agreed-upon sentence of 48 months incarceration with a $30,000 fine.

DATED: February 24, 2020

　　　　　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　EDWARD W. SWANSON
　　　　　　　　　　　　　　　　　MARY McNAMARA
　　　　　　　　　　　　　　　　　BRITT EVANGELIST
　　　　　　　　　　　　　　　　　Swanson & McNamara LLP

　　　　　　　　　　　　　　　　　DAN OLMOS
　　　　　　　　　　　　　　　　　Nolan Barton & Olmos LLP

　　　　　　　　　　　　　　　　　Attorneys for XUEHUA "ED" PENG

**Defendant's Sentencing Memo.**
*United States v. Peng*
CR 19-00589 HSG